**IN THE UNITED STATES DISTRICT COURT FOR THE**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Case No.:3:17-CR-161-ADC-DMB** |
| | ) | |
| **JAMES FRANCIS GORMAN** | ) | |

**TO THE HONORABLE DEBRA M. BROWN**
**UNITED STATES DISTRICT JUDGE**
**FOR THE DISTRICT OF PUERTO RICO**

**SENTENCING MEMORANDUM**

The Defendant, **James Francis Gorman**, through undersigned counsel, respectfully requests this Court impose a sentence of probation based on his history of registering, contributions to the economy, and his low potential for recidivism.   A sentence of probation is sufficient, but not greater than necessary, to comply with the purposes of [sentencing].*See* 18 U.S.C. § 3553(a).

I.      **Introduction  - Years of Registering**

Jurisdictions across the United States are constantly codifying codes, statutes, and ordinances that restrict where a sex offender may live.   Each state has different restrictions from others regarding the buffer zones where children might be found– schools, parks, daycares, etc.   When sex offenders leave prison, they are not provided a list of approved addresses.   Sex offenders must decipher the buffer zones on their own.   Every year, the sex offender must register with local law enforcement.   Despite these and many other restrictions, James Gorman registered as required after being released from the Massachusetts Department of Corrections.

James Gorman was convicted in 1996 of a qualifying sex offense in the Commonwealth of

Massachusetts Sex Offender Registry.[1]   According to the Commonwealth of Massachusetts , the duty of a sex offender required to register under this chapter and to comply with the requirements shall, unless sooner terminated by the board under section 178L, end twenty (20) years after such sex offender has been convicted or adjudicated or has been released from all custody or supervision, whichever last occurs.[2]   As is evidenced in the Presentence Report, James Gorman has never failed to register.   There are no arrests or convictions for failure to register in the United States or any of its territories.

On September 21, 2016, James Gorman flew to Puerto Rico.   He attempted to register as a sex offender.   An electrical plant explosion on the island[3] prevented him from completing his sex offender registration requirements.   Mr. Gorman was not trying to hide from authorities.   In October 2016, he notified Marilyn O'Neill, the sex offender registration officer (SOR), that he was in Puerto Rico.[4]   Wanting to keep her abreast of his whereabouts, Mr. Gorman sent Ms. O'Neill a copy of his itinerary with American Airlines via email.[5] Mr. Gorman was not trying to shirk his duty to register as a sex offender.

For more than ten (10) years, James Gorman registered as required.   He recognizes that the attempt to register was insufficient.   This failure to register in the District of Puerto Rico brings him in for sentencing before this Court.

## II.    James Gorman has been consistently employed.

### A.    Contract Employment

---

1 PSR ¶ 4.
2 Mass. Gen. Laws Ann.ch.6, § 178G.
3 Exhibit 1.
4 PSR ¶ 11.
5 *Id.*

James Gorman has not been in hiding since arriving in Puerto Rico.   He has been working.

James Gorman has worked on the ocean since he was nine (9) years old.   His grandfather taught him everything he knows about fishing and lobstering.   His grandfather was a lobsterman. Mr. Gorman earned no fishing wages until he was thirteen (13) years old.   By the age of twenty-three (23), he was serving as captains of boats.   There are several types of fishing boats.   There are long liners, draggers, fish specific boats, and processors.   The first boat Mr. Gorman captained was a processor boat.   Processor boats catch, sort, freeze, and package fish.   As a processor, you work six hours on and three hours off.   It was dueling work but he was a great processor.   For most, the work was difficult.   For James Gorman it was not.   Fishing is in his blood.

James Gorman has also worked as a red snapper fish captain, a long liner, and a dragger. He has fished all over the world.   He has fished in Ireland, Canada, Mexico, Venezuela, Gulf of Mexico, Alaska, and the Atlantic Ocean.

In 2016, the captain of the Day Boat Seafood called and asked Mr. Gorman to join his Puerto Rico crew.   Mr. Gorman had known about the great fishing offered by Puerto Rico's shores.   He accepted the invitation.   When he arrived, James Gorman was assigned as a long liner.   He was disappointed with the crewmembers aboard the Day Boat Seafood.   Many were drug users.   Since Mr. Gorman came to work, he worked.   The Day Boat Seafood crew caught sword, big eye tuna, albacore tuna, Mahi Mahi, and shark.   When they came back from their first boating trip, Day Boat Seafood did not have the money to pay their crewmembers.   Day Boat Seafood never paid Mr. Gorman for his services.   He will eventually sue for back wages.

–3–

### B.        Self-Employment

Prior to his arrest, James Gorman purchased a potato stand.   He intends to sell potatoes until he can save enough money to purchase his own fishing boat.   Mr. Gorman enjoys fishing in Puerto Rico.   He believes there are many entrepreneurial opportunities for fisherman on the island.   He looks forward to captaining a boat and crew of his own.

## III.    Objections to Presentence Report

### A.   James Gorman attempted to register as a sex offender in the District of Puerto Rico.

The presentence report (PSR) recommends a base offense level of 14 for a defendant required to register as a Tier II offender.[6]   However, the PSR did not recommend a three (3) level reduction under the specific offense characteristic for James Gorman's attempt to register.   Pursuant to USSG § 2A3.5 (b) (2) (B), if the defendant attempted register but was prevented from registering by uncontrollable circumstances and the defendant did not contribute to the creation of those circumstances, decrease by three (3) levels.[7]   Pursuant to *Application Note* 2 to USSG § 2A3.5(b)(2)(B), for subsection (b)(2) to apply, the defendant's voluntary attempt to register or to correct failing to register must have occurred before the defendant knew or reasonably should have known a jurisdiction had detected the failure to register.[8]

---

6 PSR ¶ 13.
7 USSG § 2A3.5 (b) (2) (B).
8 USSG § 2A3.5 (b) (2) (B).

Here, James Gorman arrived in San Juan, Puerto Rico on September 21, 2016.[9] He took a taxi to Isla Verde, Carolina.[10]   He went to visit an aunt in Isla Verde, Carolina, then had lunch at a pizzeria, and then went to the police station to register as a sex offender.[11]   Mr. Gorman waited for over 40 minutes and no one assisted him.[12]   Mr. Gorman states that he attempted to register again.   This attempt was interrupted by a power plant explosion that created an eruption in electrical services in some parts of Puerto Rico.   Mr. Gorman did not cause the explosion.   The police were not aware of Mr. Gorman's presence when he attempted to register as a sex offender in September 2016.   According to the discovery, the police learned of Mr. Gorman's presence on the island on December 9, 2016 when Mr. Gorman contacted the police regarding illicit activity by other individuals.   The discovery states that after the meeting with Mr. Gorman on December 9, 2016, a criminal history check was ran by the officer.   It alerted the officer that Mr. Gorman was a sex offender.   Consequently, an investigation was conducted to determine if he had registered in Puerto Rico.

Because Mr. Gorman attempted to register, he should receive the three (3)-point reduction in his base offense level for the specific offense characteristic of attempting to register.

---

9  Exhibit 2.
10 PSR ¶ 11.
11 *Id.*
12 *Id.*

**B.   Mr. Gorman objects to the three-points assessed to his criminal history computation in Paragraph 30.**

Mr. Gorman objects to the three-point assessment to Mr. Gorman's criminal history point computation. The Federal Probation Officer is relying on hearsay documents.   According to the PSR, there are no court documents available for the sentences alleged in Paragraph 30 for Criminal Number 2011CR093750.   This court has no charging documents or *Shepard*, 544 U.S. 13, 125 S.Ct. 1254 (2005) documents to support Federal Probation's request for the three criminal history points assessed for Criminal Number 2011CR093750.    Criminal Number 2011CR093750 should not be included in the computation of his criminal history.   Without the three-point assessment, Mr. Gorman's criminal history category would be II.

**C.   Guideline Calculations**

James Gorman guideline calculations should be:

| | | |
|---|---|---|
| Base offense level | 14 | 2A3.5 (a) (2) |
| Specific Offense Characteristics: | -3 | 2A3.5 (b) (2) (B) |
| Victim related Adjustment | 0 | |
| Adjustment for Role in the Offense | 0 | |
| Adjustment for Obstruction of Justice | 0 | |
| Adjusted Offense Level | 11 | |
| Chapter Four Enhancement | 0 | |
| Acceptance of Responsibility | -2 | 3E1.1 |
| Total Offense Level | 9 | |

At offense level 9, combined with a criminal history category of II, the guideline range of

imprisonment would be 6 months to 12 months. (Zone B).   Since the guideline range

is in Zone B of the Sentencing Table, the minimum term may be satisfied by a sentence of

probation that includes a condition or combination of conditions that substitute intermittent

confinement, community confinement, or home detention for imprisonment.

### IV.   Incarcerating James Gorman will cause harm, and will not serve any interest sought to be served under 18 U.S.C. § 3553 (a).

#### A.   Mr. Gorman will have some loss of profession and reputation.

Sex offenders often have difficulty finding jobs and places to live.[13]   The vast majority of

the public does not sympathize with the predicament of sex offenders.[14]   Generally, the public

views the release of a sex offender into their community a threat to their quality of life.[15]   It is

difficult for even low-risk offenders to find employment because of the stigma surrounding

convicted sex criminals.[16]

Mr. Gorman earned $6,000.00 to $8000 per month depending on the catch and the boat

worked.[17]   Mr. Gorman managed his money well throughout the years.   Self-employment is his

best option for success.   However, Mr. Gorman may have to accept work with other employers

until his potato stand is self-sustaining and he is able to purchase his own boat.   The requirement

to register as a sex offender and its applicable conditions will contribute difficulty in finding new

---

13 *Sex Offenders can't find jobs, homes after serving time*.   THE HOUR. Steve Koback. Times Staff Writer.   July 18, 2010.

14 *Id.*

15 *Id.*

16 *Id.*

17 PSR ¶ 56.

and suitable employment.

### B.      The need for incapacitation is low.

James Gorman has an exceptionally low risk of recidivism.    He is 40 years old, has some college, was employed throughout his adult life, and has limited history of drug or alcohol abuse. For those who have been employed, the rate is 12.7%.[18] For those with some college, the rate is just 13.9%.[19]   For those with no history of illicit drug use, the recidivism rate is half that of those with a drug history.   For individuals like Mr. Gorman, educated, have been employed, and little history of illicit drug or alcohol abuse, the recidivism rate is much lower.[20]

In imposing the most lenient sentence sufficient to account for the need to protect the public from further crimes of Mr. Gorman, this Court should consider the statistically low risk of recidivism presented by his history and characteristics.[21]

James Gorman accepts responsibility for his wrongdoing and is sincerely remorseful for his conduct.   His failure to register upon his immediate arrival to Puerto Rico was negligent.   Mr. Gorman has been humbled by these present circumstances.   He, who has never failed to register, understands that it is his duty, no matter what intervening events arise, to register.   Mr. Gorman

---

[18] *See* U.S. Sent'g Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at Exh. 10 at 29 (May 2004) [hereinafter Measuring Recidivism].

[19] *Id.*

[20] *Id.*

[21] *See*, e.g., *United States v. Darway*, 255 F. App'x. 68, 73 (6th Cir. 2007) (upholding downward variance on basis of defendant's first-offender status); *United States v. Urbina*, slip op., 2009 WL 565485, *3 (E.D. Wis. Mar. 5, 2009)(considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history, and strong family ties); *United States v. Cabrera*, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because

defendants with zero criminal history points are less likely to recidivate than all other offenders).

will work hard to maintain steady employment.   Given the totality of the circumstances, Mr. Gorman respectfully requests this Court sentence him to probation.

**WHEREFORE**, James Gorman respectfully asks that the Court consider his arguments when imposing a just sentence under §3553(a).

**I HEREBY CERTIFY** that, on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.

**RESPECTFULLY SUBMITTED**,

In San Juan, Puerto Rico, this 18th day of December, 2017.

**ERIC ALEXANDER VOS**
**Chief Federal Public Defender**
**District of Puerto Rico**

**S/LaRonda R. Martin**
**LaRonda R. Martin**
**USDC-Government No. G02207**
**A.F.P.D. for Defendant**
**241 Franklin D. Roosevelt Avenue**
**Hato Rey, PR   00918-2441**
**Tel. (787) 281-4922 / Fax (787) 281-4899**
**E-mail: laronda.martin@fd.org**